UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

GEORGE P. CONDURAGIS,
    Plaintiff,

v.

PROSPECT CHARTERCARE, LLC,
d/b/a CHARTERCARE HEALTH
PARTNERS, and PROSPECT
CHARTERCARE PHYSICIANS, LLC,
d/b/a CHARTERCARE MEDICAL
ASSOCIATES,
    Defendants.

C.A. No. 17-272-JJM-PAS

ORDER

George P. Conduragis has sued his former employers, Prospect CharterCARE, LLC, and Prospect CharterCARE Physicians, LLC (collectively, "Prospect"), for damages arising from Prospect's alleged violation of the Family Medical Leave Act ("FMLA") and the Rhode Island Parental and Family Medical Leave Act ("RIPFMLA"). Prospect has moved to dismiss the suit and seeks to compel arbitration. ECF No. 9. For the reasons set forth herein, the motion is DENIED.

I.    BACKGROUND

Mr. Conduragis was hired by Roger Williams Medical Center ("RWMC") in March of 2014. In the next few months, RWMC and its holding companies were to be acquired by Prospect. To this end, Mr. Conduragis received a letter from Kenneth Belcher, the chief executive officer of CharterCARE Health Partners, and

Thomas Reardon, the president of Prospect East Holdings, Inc., announcing the acquisition of RWMC and its holdings by CharterCARE and explaining its implications for RWMC employees (the "Letter"). The Letter stated in relevant part:

> As a result of the transaction, depending upon your current location within the CharterCARE system, you will become an employee of Prospect CharterCARE, LLC, . . . [or] Prospect CharterCARE Physicians, LLC . . . (individually or collectively, the "Company").
>
> . . .
>
> At the time our transaction closes (as noted above, on or about June 20, 2014), you will become a Company employee and will remain in your current position, at your current status, rate of pay, and job title. As mentioned in our Quarterly Employee Forums, employees will not be required to re-apply for their positions. Company payroll dates and benefits providers will also remain the same.
>
> . . .
>
> Absent written agreement that states otherwise, your employment will continue on an at-will basis, meaning that either you or the Company can terminate the employment relationship at any time and for any reason and it also means that the Company can change the terms of your employment, including compensation and benefits, at any time (this is no change from your present employment relationship with CharterCARE). . . .
>
> Please sign below to acknowledge your acceptance of the above terms of employment with the Company and return to Chris Da Rosa, Human Resources Generalist. There are two additional documents you will need to sign. They are Prospect Medical Holdings' Code of Business Conduct and Ethical Business Practice ("Code of Conduct") and Arbitration Agreement.

ECF No. 9-3 at 2–3.

The referenced agreement (the "Arbitration Agreement") was attached to the Letter via a hyperlink to an intranet site. No physical copy was attached. The

2

Letter did, however, include the "review and receipt forms" for the Arbitration Agreement.

The Arbitration Agreement stated that, "[t]o the fullest extent allowed by law, any controversy, claim or dispute between [Mr. Conduragis] and [Prospect] . . . relating to or arising out of your employment or the cessation of that employment will be submitted to final and binding arbitration." ECF No. 9-2 at 5. The Arbitration Agreement "covers all employment-related claims including, but not limited to, claims for unpaid wages, breach of contract, torts, violation of public policy, discrimination, harassment, or any other employment-related claim under any state or federal statutes or laws relating to an employee's relationship with his/her employer." *Id.* The Arbitration Agreement ends by reciting that, "by agreeing to this binding mutual arbitration provision, both [Mr. Conduragis] and [Prospect] give up all rights to a trial by jury." *Id.* (emphasis removed).

Mr. Conduragis signed both the Letter and the Arbitration Agreement on the same day and subsequently retained his position, now as an employee of Prospect. In late December of 2016, Mr. Conduragis was terminated, allegedly in violation of the FMLA and RIPFMLA, giving rise to this action.

## II. STANDARD OF REVIEW

The Federal Arbitration Act (FAA) governs written arbitration agreements. *See* 9 U.S.C. § 1 *et seq.*; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). When "construing an arbitration clause, courts and arbitrators must 'give effect to the contractual rights and expectations of the parties.'" *Stolt-Nielsen S.A. v.*

3

*AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). The federal policy favoring arbitration "does not totally displace ordinary rules of contract interpretation." *Paul Revere Variable Annuity Ins. Co. v. Kirschhofer*, 226 F.3d 15, 25 (1st Cir. 2000). Ambiguities in arbitration agreements are construed against the drafters. *Id.*

A party seeking to compel arbitration under the FAA "must show that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." *InterGen N.V. v. Grina*, 344 F.3d 134, 142 (1st Cir. 2003). The first element—whether a valid arbitration agreement exists—is a question of state contract law. *See Campbell v. Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 552 (1st Cir. 2005).

In Rhode Island, "a valid contract requires 'competent parties, subject matter, a *legal consideration*, mutuality of agreement, and mutuality of obligation.'" *Voccola v. Forte*, 139 A.3d 404, 414 (R.I. 2016) (quoting *DeLuca v. City of Cranston*, 22 A.3d 382, 384 (R.I. 2011)). Legal consideration "consists of some legal right acquired by the promisor in consideration of his promise, or forborne by the promisee in consideration of such promise." *Id.* (quoting *DeLuca*, 22 A.3d at 384). Rhode Island assesses consideration with the "bargained-for exchange test," which provides that "something is bargained for, and therefore constitutes consideration, 'if it is sought by the promisor in exchange for his promise and is given by the

4

promisee in exchange for that promise.'" *DeAngelis v. DeAngelis*, 923 A.2d 1274, 1279 (R.I. 2007) (quoting *Filippi v. Filippi*, 818 A.2d 608, 624 (R.I. 2003)).

Contractual promises are illusory where they are "binding on one party because the other party has in effect promised nothing." *Holliston Mills, Inc. v. Citizens Tr. Co.*, 604 A.2d 331, 335 (R.I. 1992). "In general termination clauses supported by adequate consideration are not illusory, but if a termination clause allows a party to terminate at any time at will without more, that promise is illusory." *Id.*

## III. DISCUSSION

The preliminary question the Court must consider is the scope of the agreement—does the Arbitration Agreement stand alone or is it inextricably linked with the Letter? Prospect argues that the Court should consider the Arbitration Agreement as the full extent of the agreement; Mr. Conduragis urges the Court to take a broader view, that the agreement is in fact composed of both the Letter and the Arbitration Agreement. The Court concludes that it must construe both the Letter and the Arbitration Agreement together.

The Arbitration Agreement here was presented to Mr. Conduragis by way of the Letter. The Letter states that, to maintain his employment, Mr. Conduragis "need[s] to sign" the Arbitration Agreement. Because he must agree to it to be employed by Prospect, the Arbitration Agreement fairly can be considered a "term of employment." Three sentences earlier in the Letter, Prospect reserved the right to "change the terms of [Mr. Conduragis'] employment, including compensation and

benefits, at any time." The Arbitration Agreement is attached to the letter by way of a hyperlink; it appears that the only way Mr. Conduragis was given the Arbitration Agreement was via that intranet link. The Arbitration Agreement was never meant to be construed independently; it was offered in conjunction with continued employment and was clearly meant to be a term of that offer. Both the Arbitration Agreement and the Letter were signed by Mr. Conduragis on the same day, June 17, 2014.[1] The Arbitration Agreement does not contain an integration clause. Taken together, these facts give rise to the inference that the scope of the agreement includes both the Letter and the Arbitration Agreement.

The next question, then, is whether this agreement is supported by sufficient consideration. Prospect argues that there is sufficient consideration in the Arbitration Agreement: specifically, the mutual promises to arbitrate and to give up all rights to a trial by jury. Alternatively, Prospect argues its offer to continue to employ Mr. Conduragis was sufficient consideration. Mr. Conduragis, on the other hand, argues that the promise to arbitrate is illusory, and that continued employment is insufficient consideration. The Court concludes that there is insufficient consideration to support the agreement.

The mutual promises to arbitrate contained in the Arbitration Agreement are insufficient consideration because Prospect's promise is illusory. As discussed above, the Arbitration Agreement was a term of Mr. Conduragis' employment with Prospect. When read in conjunction with the clause contained in the Letter that

---

[1] The Letter is dated June 12, 2014; the signature for Prospect's representative on the Arbitration Agreement is dated June 13, 2014.

allows Prospect to "change the terms of [Mr. Conduragis'] employment . . . at any time," Prospect retained the right to free itself from the Arbitration Agreement. This renders the mutual promise to arbitrate illusory and unenforceable. *See Holliston Mills*, 604 A.2d at 335. This is analogous to courts refusing to enforce agreements where employers embed arbitration agreements in employee handbooks, reserving the right to alter any term of the handbook. *See, e.g., Domenichetti v. Salter Sch., LLC*, No. 12-11311-FDS, 2013 WL 1748402, at *6–7 (D. Mass. Apr. 19, 2013); *Canales v. Univ. of Phx., Inc.*, 854 F. Supp. 2d 119, 124–25 (D. Me. 2012); *see also Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 206 (5th Cir. 2012) (unilateral termination clause in arbitration agreement in handbook gives company "its own escape hatch" and is unenforceable).[2]

Moreover, Prospect's offer to Mr. Conduragis of continued employment is insufficient consideration. The Rhode Island Supreme Court has not squarely decided whether continued employment can be sufficient consideration for a contract. The Rhode Island Superior Court, however, has held that continued employment is insufficient. *See D. Miguel & Son Co. v. Barbosa*, No. 84-3186, 1985 WL 663146, at *2 (R.I. Super. Ct. Mar. 11, 1985) ("Continued employment alone is insufficient consideration in that it does not require an employer to change its existing position."). Other courts, including a magistrate judge in this district, have

---

[2] Alternatively, it is at least ambiguous as to whether the Letter's reservation of the right to alter any term or condition of employment extends to the Arbitration Agreement. Because such ambiguities must be construed against the drafter, *see Paul Revere*, 226 F.3d at 25, the Court construes the Letter as giving Prospect the unilateral right to alter the Arbitration Agreement without more (such as notifying Mr. Conduragis).

suggested at times that continued employment *is* sufficient. *See, e.g., Nestle Food Co. v. Miller*, 836 F. Supp. 69, 77 n.32 (D.R.I. 1993) (relying on other states' law to conclude continued employment was sufficient consideration). The facts here, however, counsel otherwise. Prospect offered Mr. Conduragis only continued at-will employment: he remained in his current position, with his current status, rate of pay, and job title. He was not required to re-apply for his position. His pay was uninterrupted. He retained the same benefits with the same provider. In effect, Prospect had the power "to terminate at any time at will without more," *Holliston Mills*, 604 A.2d at 335, which renders the promise of continued employment illusory.

## IV. CONCLUSION

Prospect has not shown that a valid agreement to arbitrate exists. Thus, Prospect's Motion to Dismiss and Compel Arbitration (ECF No. 9) is DENIED.

IT IS SO ORDERED.

John J. McConnell, Jr.
United States District Judge

November 29, 2017